The third case of the day, Morris v. Bartow. Mr. Hennick. Thank you, Your Honor. May it please the court, my name is Robert Hennick and I represent Kenneth Morris on this appeal. The central issue on this appeal, of course, is whether Mr. Morris's plea to a charge of first degree reckless homicide was voluntary, as required by due process, given the circumstances of the case where his only other option was to proceed to trial in two days with a lawyer who had done nothing over the last two months to prepare for trial on a charge of first degree intentional homicide with a mandatory life sentence. Now, this is a bit easier than, well, it might not appear that way under the briefs, but it's a bit easier than most habeas cases because the state court did not rule on the merits of this particular issue. Accordingly, the usual deference provided to the state court would not apply here. That's the usual deference under 2254 sub D. I do have to admit that there is a small amount of deference that probably should be granted to the court of appeals decision. At one point, they indicate that the prosecutor did not promise that the case would go to trial on a first degree reckless homicide. Rather, he only indicated that was intent. Well, let's start with that issue. Generally, under Goodwin, under Brady, under Bordenkercher, if a prosecutor increases the charge for purposes of trial, that's fine. That may be a but-for cause, an encouragement for the defendant to plead guilty, but it is not improper under normal circumstances. In this case, we do not have a normal circumstance because two months prior to the trial, the prosecutor got up and when asked by the judge, specifically said, this, that is the first degree reckless homicide charge, is what we are going to be going to trial with. The judge responded, that's important because I understand that sometimes prosecutors increase the charges. And I want to make sure that doesn't happen here. So Mr. Hennock, in this case, the judge, I've got to say, the thought that the prosecution would walk in the day of trial and say we'd like to raise the charge from reckless to intentional would probably trouble most trial judges, I would assume. The judge here, I didn't see any indication  He said, we'll talk about it later. And then that conversation never took place because Mr. Morris decided to plead guilty. That is a correct reading of the transcript. So that makes the situation considerably more ambiguous. It makes the situation more ambiguous in terms of what the actual trial would be. But when you're talking about voluntariness and the plea, the question is what Mr. Morris knew at the time. What Mr. Morris knew at the time was that this prosecutor was reneging on his promise. What Mr. Morris knew at the time was that the prosecutor stated immediately after his lawyer said that he wasn't ready for trial, he wasn't prepared for trial, the judge said, we'll do trial in two days. The prosecutor said, this case is going to trial on first degree intentional. Now after that, I understand that there are changes that the court is referring to that we'll discuss that later. But the fact is that Mr. Backus, the trial attorney, made no effort to object that that was a violation of the promise, made no indication on the record. The court made no indication on the record that that was inaccurate. So Mr. Morris was left at the time to believe that when the prosecutor says this will go to trial on a first degree intentional charge, that that's what it's going to go to trial on. And what is our factual record on that point? The factual record on that point is a couple of things. Number one, the actual transcript where the prosecutor says, I told the attorney a while ago. About what you just said about Mr. Morris' state of mind. Right. Well, on Mr. Morris' state of mind is, I believe, in the 97406 motion, which is the state circuit court post-conviction motion. I can't recall exactly whether there's something in there, but I know that we did include allegations in there concerning that but for the prosecutor reneging, but for the counsel not being prepared to trial, but for the judge only granting a two-day extension, that he would have insisted on his right to a trial. That, of course, there was never a hearing on that because the state court denied that motion without a hearing on a procedural ground. A procedural ground that the Court of Appeals then affirmed, but that the respondent has now conceded is not an independent and adequate state law ground. So this is something that, as I believe I indicated in my brief, that if there are issues regarding these kind of things that were presented to the circuit court, but were never decided because we were denied a hearing, this is something that would be appropriate for remand for hearing in the district court. And I understand that there are cases where you can't do that. If you're looking at just whether under a 2254-D type thing, whether the decision was contrary to or an unreasonable application of controlling Supreme Court precedent, you have to rely strictly on what the record is in the state court at the time. Can I raise with you one other thing that is troubling to me? As the state courts pointed out, in essence, whether Mr. Morris was coerced goes to his own state of mind. And he not only entered the plea, gave all the sufficient answers in the plea colloquy, but then with new counsel for sentencing, and then with additional counsel for direct appeal, went through all of that without ever trying to withdraw his guilty plea or claiming coercion, right? I believe it's correct that according to the record as it exists, he never told his appellate attorney that he felt coerced. We've got fact findings to that effect that we have to treat as conclusive. And so the procedural issues here are quite a tangle. But the failure to have raised those issues back at a time when the court could have done something about it, when the state courts could have done something about it, is very troubling to me. OK, if I may address that. Please. The first time whether anything was raised prior to sentencing, that is not in any sense a waiver under Wisconsin law. It's not in the briefs because it wasn't raised. But under Wisconsin law, it just makes the difference between whether you have a fair and just standard for moving to withdraw a plea or whether you have to show that the plea was not knowing, voluntary, and intelligent. So that's not a waiver. On the direct appeal, that is the no merit appeal. And that's the ground that the Court of Appeals actually relied on in this case to hold that we had procedurally defaulted that claim. And that procedural default argument is what the respondent has now agreed is not an independent, inadequate state law ground because it was applying a new rule of procedure retroactively to Mr. Morris. So we have that. And at that point, we came in. We were appointed by the district court. And we raised these issues at that point. But the court raised the other issue of, well, isn't it important that the defendant didn't tell his lawyer, as the circuit court found, didn't tell his lawyer that he felt coerced? And I think another addition to that is the fact that at the plea hearing, when asked whether or not he was forced to enter the plea, he answered no. And obviously, those are concerning. But I think there is a valid response to that, which is at the plea hearing, the judge already knew that the prosecutor was threatening to raise this to first degree intentional. The judge already knew that the attorney had done nothing in the two months to prepare for trial. The judge already knew that it nonetheless had scheduled the case and ordered the case to go to trial in two days. The judge knew all of those things. So how is somebody in Mr. Morris's position to interpret that? Obviously, the judge didn't think that there was anything improper about that. His attorney didn't object. So his attorney obviously didn't think that there was anything improper about that. The prosecutor did it. So the prosecutor didn't think there was anything inappropriate about that. Mr. Morris is not a lawyer. Mr. Morris, this is apparent from the record, at least on a bet foreground, that he only pled because of these three things that we're pointing to. But he is not a lawyer. He did not know that these things were inappropriate. And everything he saw in court indicated to him that the people who should know did not believe that it was inappropriate. Same thing on appeal. The respondent admits that basically everything we're relying on for coercion is apparent from the record. Again, the lawyer in an Anders brief, before doing an Anders brief, is required to review the entire record and make an independent determination whether there is any basis for a claim. And his lawyer apparently didn't see anything inappropriate about this. It's the lawyer's job to decide whether or not there is a legal claim, not the defendant's. And the defendant doesn't waive a legal claim because he's not smarter than his lawyer. So that is my response to the court's question on that particular point. Now, we still have to address the issue with regard to the promise, whether there was a promise, whether there wasn't a promise. The State Court of Appeals held that it wasn't a promise. Now, that could be viewed as a factual finding. It could be viewed as an interpretation, a legal interpretation, of what's in the record. I think the proper way to view it is what's in the record, what the prosecutor actually said when he was asked by the judge. That is the facts issue. Any interpretation of that, whether that's coercion or whatever, is a legal issue. And therefore, that should not be in deference under 2254 sub e. However, even if you look at it as a factual finding, given the evidence in the record, given what the prosecutor actually said, the clear and convincing evidence is that the state court was wrong. This was a promise. The respondent has not indicated that if we're right on this, then there's some other grounds that we should lose. If we are right on this, I think they are conceding that we should win. And I believe strongly that we are right on this. I see that my time is into my rebuttal. Thank you. Thank you, Mr. Hannock. Ms. Mohler? May it please the court, I'm Assistant Attorney General Marguerite Mohler, representing the warden, Mark Clements. Even if this court were to resolve all of the procedural issues presented in Morris's favor and review his underlying constitutional claim that his guilty plea to first degree reckless homicide was coerced, Morris still would not be entitled to any relief. And that is primarily because the record of the state court proceedings, in particular the factual findings that were made by Judge McMahon following a post-conviction evidentiary hearing at which both Morris and his post-conviction and appellate counsel, David Lang, testified, are entitled to the presumption of correctness. And Morris has not shown that any of those factual findings were contrary to the great weight and clear preponderance of the evidence. In addition, if you look at the actual transcripts of the proceedings in the state court, and those transcripts are all before this court at various points in the record, including in Morris's appendix, none of the three components of what he calls his coerced guilty plea claim has any merit. The first part of it is his claim that trial counsel Bacchus was ineffective because he failed to prepare for a first degree homicide trial. Well, the reason he didn't prepare was that Morris had led him to believe that he was going to be entering a guilty plea to first degree reckless homicide. And it wasn't until the Saturday before trial that Morris and his family members met with Bacchus and expressed some dissatisfaction with his handling of the case because there was a misunderstanding as to whether he could still charge in the criminal complaint, which was second degree reckless homicide. Apparently, when they scanned the bracelet that Morris wore at the House of Corrections, it came up that the charge was second degree reckless. And so naturally, you'd be questioning, why is my attorney counseling me to plead into something greater than what I'm charged with? But the fact is that at that point, the charge had already been upped to first degree reckless homicide following the waiver of the preliminary examination. Ms. Mohler, could you tell us the difference in sentencing that would have applied to Mr. Morris at that time between second and first degree reckless homicide? I think, and I'm not positive because the Wisconsin legislature did a lot of tinkering with the- That's why I'm asking you. And Mr. Henick probably knows this better. But I think that the maximum sentence on the first degree reckless, which is what he pled to, was 60 years, and that on second degree, it was 40. And I'm not real confident, as you can tell, with my answer. And in fact, Judge D'Amato gave him a very severe sentence. He gave him a 60-year sentence, 40 in on initial confinement, 20 out on extended supervision, which is the bifurcated format that Wisconsin has gone to. In any event, Mr. Backus was not guilty of ineffective assistance because his client, Mr. Morris, not suggested, told him on several occasions before trial that he was going to enter a plea. And it was not until this misunderstanding occurred that he started to get cold feet. If you look at Mr. Backus's statements, and these are contained on Appendix 176 to Mr. Henick's appendix in this court, Mr. Backus told the court that, I did not prepare this case for trial. All along, the issue was one of what to plead to, as compared to go to trial. And he said, I had no clue I would be going to trial this morning because of the whole nature of the case, with one of acceptance and of conclusion by plea, until this morning. So I don't think you can really fault Mr. Backus for being unprepared when he thought he was coming in for a plea hearing, and he was told otherwise, and was told by Morris and Morris's family, who had actually paid to retain Backus's services, that they wanted a new attorney. So that was the first he had heard that they wanted to fire him and to get him off the case. The second component of the coerced plea claim was that there was prosecutorial misconduct, because the assistant district attorney, Mark Williams, threatened to raise the charge to first degree intentional homicide were Morris not to enter a plea. Now, first of all, I think as Judge Hamilton pointed out, the prosecutor didn't have the court's permission to amend it at that point. All he said was that if this case goes to trial, I'm going to seek leave of the court to amend the charge up. And Judge D'Amato said, well, we'll talk about that at 1.30 when we reconvene. So that was not a done deal at all. And when the prosecutor had said, within the earshot of Mr. Morris and Mr. Backus, that this has been going on a long time, that we've agreed to plead, there was not any kind of disagreement, especially when you look at the plea colloquy that followed that very afternoon after the whole misunderstanding was cleared up and Morris then understood why second degree reckless homicide was no longer an available option, that there had been a mistake made at the district attorney's office and in the way his electronic, some kind of a bracelet that he wore in the House of Correction registered. Do we have testimony about conversations that occurred between the morning and afternoon sessions? I don't think we have specific testimony. It's just more or less Mr. Backus explaining to the court what the misunderstanding was. And then during the colloquy, the judge specifically asked Morris, did you clear up the problem you had before? I'm paraphrasing now. And Morris said, yes. He asked him whether anything or anybody was forcing him to plead, no. And I think tellingly, he asked him whether he was satisfied with the performance of his attorney. And Morris said, yes. And certainly if he was dissatisfied, thought that, hey, the only reason I'm pleading in your honor is because I'm scared to go to trial on a first degree murder charge, he would have said so at that time. But he never gave any kind of inkling that that was the case. And the same is true when you go to the sentencing hearing, which I realize is after the fact. But by that point, Morris had hired a new attorney, Thomas Allen, to represent him. And there was nothing at the sentencing hearing to suggest that he was reneging on his plea. Rather, Morris accepted responsibility for his actions. And I think it's important to note that the circumstances of the crime were that only Morris and the victim were eyewitnesses to what occurred. The victim was shot in the head at close range. Morris admitted that he did it. But he said, we were both high on drugs and we were playing, I was playing around with a loaded gun, and that's how the murder occurred. But he didn't go to the police right after this happened. Instead, he dumped the victim's body in an alleyway where it was found, I don't even think the same day as the shooting, it was found later by passersby. And he tried to enlist the aid of Eric Morris to clean the blood out of his van or vehicle where the shooting had occurred. So when you look at all these facts and the idea that Bacchus is telling the court this was always going to be a question of what degree of homicide are we going to plead to, not whether we're going to trial, I think there's never been anything contrary to that stated on the record or under oath to undermine that. Ms. Mohler, can I ask you a couple of questions? In the, both the prosecutor and the judge in the trial court in state court back in 2001, seemed to treat this as an old case that had to be disposed of as quickly as possible. And it was just three months after the shooting? I found that a little odd too, but when I was rereading the transcript, I noticed that the prosecutor, when they were trying to set a trial date, was concerned that the trial date not be set more than 90 days out. And 90 days under Wisconsin statute, when there's a speedy trial demand, you're supposed to try the case within that timeframe. 90 days out from the charge? After the charge, well, after the, I think it's, I believe it's after the demand has been made, but Mr., I don't do trial work, but I think that's correct, that it's after the demand. I am not aware whether a speedy trial demand was ever made here, but I found it kind of interesting that Mark Williams said, well, if we put it out until February, we're going to go beyond the 90 days. So I'm not sure what the allusion there was, but I agree that when they talked about it being an old case, maybe that was the situation in Milwaukee in 2001, but certainly in my experience, 90 days is not an old case when you're talking about any degree of homicide. And if you could kind of go back to the heart of the case here, at least as I see it. To the which case? I'm sorry. The heart of this case. Oh, heart. Where we've got a defendant who's being told by the judge, I'm ready to go to start the trial today. The attorney says, I'm not ready. And the judge gives him two days to start a homicide trial. That's pretty startling. I would be terrified about whether I was going to get a fair trial under those circumstances. It is startling, but taken out of context, you have to realize that up until the Saturday before that hearing on January 29th of 2002, Mr. Morris thought he was pleading in. He thought he was pleading in to first degree reckless homicide, which he eventually did plead into. But somehow in between the conferences he had had with Mr. Backus at the jail, and when they met with the family on that Saturday, he got the notion that he could have been pleading into a lesser crime that would have carried a lesser sentence. And that's where this whole idea that he wanted to go to trial came in. But in response to the whole idea of two days time, there's never been any kind of allegation as to who the defense was planning to call as a witness that would have required Mr. Backus to prepare for trial within that two day span of the adjournment that the trial court was willing to give him, other than Morris himself. There were no eyewitnesses to the crime. And the only person ever mentioned as a possible defense witness might have been Morris. And in terms of cross-examination, the prosecutor gave all the discovery to Mr. Backus on the first appearance he made, which was the date of the adjourned, not adjourned, excuse me, waived preliminary examination in November. And presumably the state's witnesses would have all been listed in the discovery. And Mr. Backus knew who he would have to be cross-examining had the case gone to trial two days later. Backus didn't say anything like, whoa, two days is not enough for me to do this. And there's really no evidence in the state court record of what type of preparation he would have needed that extended more than two days. And when it comes down to it, Judge D'Amato was willing to spin off the case to another Milwaukee County Circuit Court judge. And we don't know what would have happened if there had been this spinoff and Backus would have come in and said, hey, I just found out something new I do need in more than two days to prepare. Because it was all short-circuited when at 1.30 that afternoon, they came back into court and Morris said, I'm going to plead. And again, this was the plea that he was planning to enter a week or so earlier, and it only came up over the weekend that he misunderstood that he could not plead into the lesser offense of second degree reckless homicide. Ms. Poehler, if I could ask you to, at the risk of summarizing your brief, I will confess the procedural bar issues here are unusually kaleidoscopic. Good adjective. As they have shifted at every stage of the state and federal courts. My understanding is that a procedural bar has to be something that the state courts actually relied upon based on Harris against Reed, but there may be some exceptions. I'd like you to basically chart what you think is the most straightforward procedural bar that you think keeps us from deciding the merits here. First of all, I think there's two kinds of procedural bars. One in which the state court actually relied on a procedural bar, in which case the federal court says, okay, was this bar independent and adequate? But the kind of procedural bar that I'm advocating for, which is that the failure to file a petition for review after the no merit direct appeal, that isn't the kind of procedural, I see my red lights on, if I could just finish my response. That isn't the kind of procedural bar that the state court has to definitely rely on. And Casperson cited in my brief as an example where this court found that a petitioner had procedurally defaulted several claims because he had not included them in his petition for review to the Wisconsin Supreme Court. And the state court never made a procedural default finding. It was simply by operation of law. Okay, but if I understand correctly, that theory, that the failure to seek Wisconsin Supreme Court review from the original no merit appeal decision assumes, doesn't it, that there was at least some decision on the merits of the coercion claim, which was not actually presented, right? Well, it's not actually presented in terms of describing it as a coerced plea based on these three factors. But for all the reasons cited in my brief, when you've got the no merit procedure, the court of appeals is supposed to independently examine the record for issues that were not even raised by the attorney in the no merit appeal. So in that sense, yes, you'd have to first find that the direct appeal was merits-based in order for my procedural default argument to make any sense. The other procedural default argument that I'm not making, and the one the district court relied on, I don't think would gain any traction with this court because it wasn't until 2005 that the Wisconsin courts decided that Escalona-Naraño's bar applied following a no merit as opposed to a merits appeal. And since by that time, Morris's direct appeal had long been decided, ended in 2002, I didn't advance that argument in this court. Sorry, one other thing, but if you could address Mr. Hennack's last point about whether you agree, I'll try to rephrase it or capture it, but whether you agree that if the prosecutor in fact made a promise not to pursue the more serious charge that your side of the case is in trouble. I don't think that we're in trouble. I think it weakens it because he is arguing that it's not just the promise, but these three factors that all together in combination with one another caused him to have a coerced plea. There's no causal nexus between the so-called promise, which we dispute was a promise to Morris. There was never any kind of consideration for him saying that. He was answering a question. It was a statement of present intent as of December 5th. And by the time we got to the trial date, it was January 29th. And Bacchus himself said that he was aware prior to January 29th and that he had told Morris the week before that if you don't plead, we might be going to trial on first degree intentional homicide. So Bacchus knew about it for a longer time than Morris, but Morris, according to Bacchus at least, knew about this possible raise in the charge the week before. Thank you. Thank you, Ms. Moeller. Mr. Haneke? First, in response to the court's question regarding the difference between first degree and second degree reckless, first degree reckless at the time was a maximum of 60 years with 40 years of initial confinement time. According to the complaint, which is in the record, the second degree reckless is a maximum of 15 years with a possible five years added for the enhanced or for being armed. So there's a very significant difference there. And also the 15 years, I believe it only be 10 years of initial confinement time. So the difference is 10 years versus 40 years of initial confinement. The respondent repeatedly says that Morris led Bacchus to believe that he was going to plead to first degree reckless homicide. There's absolutely nothing in the record to support that. The motion, the post conviction motion, I believe denies that. The fact is that when we look at the timing  we have December, the beginning of December, we have a status hearing to schedule everything. During that hearing, the judge issues a scheduling order. The scheduling order sets a pre-trial date. Prior to the pre-trial date under that order, significant progress was to be made regarding preparation for trial. That's number one. Number two, also the pre-trial date was a deadline for any plea agreements. Now we know that there was no plea agreement prior to that date because the parties didn't come in and say anything about a plea. We know from Mr. Bacchus' statements on the day of trial when he came in and he was unprepared, a couple of things. One, that the week before he had told Mr. Morris that the prosecutor was now saying that if this case goes to trial, it's going to be on first degree intentional. We also know from Mr., may I continue? I'm sorry, my red light is on. Oh, you may continue. Okay, thank you. We also know from Mr. Bacchus' statements that at that time, that had a very significant impact on, it elicited a major response from Mr. Morris. We also know that at that time, Morris decided to enter a plea. We do not have any indication that he had pled or agreed to plead earlier. It was then subsequently, so this was the week before the trial date where there first is a decision to enter a plea. And then the weekend before when Bacchus went in to go through the plea questionnaire with him, that's when there is a Bacch. So this isn't something that had gone on for months with the idea that there was going to be a plea to first degree intentional homicide. He was willing to plead to the second or first degree reckless homicide. He was willing to plead to the second degree reckless. He was always willing to plead to that. That's clear from the record, I believe. But the issue was whether he would be willing to plead to first degree reckless. And that didn't happen until the week before trial. Thank you, Mr. Hennick. Thank you, Your Honor. Mr. Hennick, you accepted the appointment in this case. Yes, I did. And ably represented your felon. And I want to extend on behalf of the court, thanks for taking this appointment. Well, thank you, Your Honor. Case is taken under advisement.